

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

August 29, 1973

*overruled
by ORD-321
where conflicts*

The Honorable Raymond W. Vowell
Commissioner, State Department
of Public Welfare
John H. Reagan Building
Austin, Texas 78701

Opinion No. H- 90

Re: Applicability of House Bill
6, Acts of the 63rd Leg.,
Regular Session, 1973, to
certain records and inform-
ation in the custody of the
Department of Public Welfare.

Dear Commissioner Vowell:

You have requested our answers to a series of questions concerning House
Bill 6, sometimes referred to as the Open Records Law. House Bill 6, enacted
by the 63rd Legislature and effective immediately upon its signing in June, 1973,
declares as its policy:

> "Pursuant to the fundamental philosophy of the
> American constitutional form of representative
> government which holds to the principle that govern-
> ment is the servant of the people, and not the master
> of them, it is hereby declared to be the public policy
> of the State of Texas that all persons are, unless
> otherwise expressly provided by law, at all times
> entitled to <u>full and complete information regarding</u>
> <u>the affairs of government and the official acts of</u>
> <u>those who represent them as public officials and</u>
> <u>employees.</u> The people, in delegating authority, do
> not give their public servants the right to decide what
> is good for the people to know and what is not good
> for them to know. The people insist on remaining
> informed so that they may retain control over the
> instruments they have created. To that end, the
> provisions of this Act shall be liberally construed
> with the view of carrying out the above declaration
> of public policy. " (Emphasis added)

The Act then proceeds to define the terms "governmental body" and "public
records". "Public records" is defined to mean "the portion of all documents,
writings, letters, memoranda, or other written, printed, typed, copied, or
developed materials which contain public information. " "Public information" in

turn is defined in § 3 as "all information collected, assembled or maintained by governmental bodies, pursuant to law or ordinance or in connection with the transaction of official business. . . . ." It is provided that such information is available to the public during normal business hours of any governmental body with a number of exceptions such as information deemed confidential by law, etc. We will notice these exceptions more specifically as they have to do with your specific questions.

As indicated by your request for our opinion as well as other requests we have received, the Act poses a number of questions which will have to be answered in its administration. Perhaps, however, the basic problem arises from the fact that the Act poses a confrontation between two newly revitalized fundamental rights of individuals: the right of the individual to know and to be informed regarding the affairs of his government and the officials who represent him, as opposed to the right of privacy so recently recognized in Texas in Billings v. Atkinson, 489 S. W. 2d 858 (Tex. 1973), which defined the right as:

> " . . . The right to be free from the unwarranted appro-
> priation or exploitation of one's personality, the publicizing
> of one's private affairs with which the public has no legit-
> imate concern, or the wrongful intrusion into one's private
> activities in such manner as to outrage or cause mental
> suffering, shame or humiliation to a person of ordinary
> sensibilities." (489 S. W. 2d at 859)

The right to privacy, guaranteed by the Fourteenth Amendment to the Constitution of the United States and described by the United States Supreme Court in Roe v. Wade, 410 U. S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973) is even broader.

On the other hand, when public officials are involved, they are not accorded the same right of privacy and the courts recognize the importance to the public of a discussion of the character and qualifications of candidates. New York Times Co. v. Sullivan, 376 U. S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964) and its progeny.

With these comments in mind we look then to your specific questions.

Your first question is:

> " . . . whether the statute has any retroactive effect.
> Specifically, does the general statute require disclosure

of all records within the custody of governmental agencies
regardless of when such records were compiled or does
it apply only to records compiled subsequent to its effective
date?"

In our opinion, House Bill 6 applies to all records regardless of when
compiled. It does not, however, have a technically "retroactive" effect. When
the courts and the Constitution speak of retroactive laws, reference is to laws
which affect vested interests. Deacon v. City of Euless, 405 S. W. 2d 59 (Tex.
1966). There is no inhibition, constitutional or otherwise, against a law which
merely affects the remedy or the procedure so long as no vested right is impaired
or destroyed. Paschal v. Perez, 7 Tex. 348 (1851); City of Fort Worth v. Morrow,
284 S. W. 275 (Tex. Civ. App., Fort Worth, 1926, err. ref'd.); McCain v. Yost,
284 S. W. 2d 898 (Tex. 1955).

Your second question asks:

"2. Section 6(a)(1) appears to mean that the statute's
provisions do not apply to incomplete records or reports of
incomplete investigations. Does this mean that if a given
record is required to be released by a governmental
agency, investigations which are in progress at the
time the information is requested may be withheld from
disclosure? Does it mean that if, for instance, the
entire record is being considered in light of a current
investigation that the entire record may be withheld
from disclosure until the investigation is complete?"

Section 6(a)(1) provides:

"Sec. 6. SPECIFIC INFORMATION WHICH IS PUBLIC.
(a) Without limiting the meaning of other sections of this Act,
the following categories of information are specifically made
public information:

"(1) reports, audits, evaluations, and investigations
made of, for, or by, governmental bodies upon completion;
. . . " (Emphasis added)

The subsection does not apply to records, as such. It is our opinion that
"reports, audits, evaluations and investigations" do not become "public
information" until their completion, and that the Act does not require their
disclosure in partially completed form. The language of § 6(a)(1) does not

limit the public nature of the records upon which such "reports . . . [etc.]" are based, which may be "public information" at all times, if otherwise made so by the Act.

Your third question is whether records maintained by your department pursuant to § 8(a) of Article 695c, V. T. C. S., are subject to the disclosure provisions of the Bill. If our response is affirmative you then ask whether the entire record should be delivered or should you be permitted to withhold information considered confidential. Section 8(a) of Article 695c, V. T. C. S, the Public Welfare Act of 1941, contains provisions with reference to licensing of various child-caring and child-placing facilities. It certainly would appear that, generally, records bearing upon the licensing of such an agency would be within the type of public record subject to disclosure provisions. However, to the extent the records contain information considered confidential within § 3 of the Act it should be withheld. Section 8(a) of Article 695c in its Subsection 5 requires individual social and health records to be maintained. Certainly the identity of the persons covered by those would not appear relevant to licensing and would be confidential information not subject to disclosure, without their consent.

You state that the Department is requesting injunctive action against two of the facilities whose records have been requested. Section 3(a)(3) of House Bill 6 excepts from those documents which are disclosable: "information relating to litigation of a criminal or civil nature and settlement negotiations, to which the State or political subdivision is, or may be, a party, or to which an officer or employee of the State or political subdivision, as a consequence of his office or employment, is or may be a party, that the attorney general or the respective attorneys of the various political subdivisions has determined should be withheld from public inspection."

Where the records concern a matter in litigation, it is our opinion that a State agency such as your department must withhold such information related to the litigation as the attorneys representing the State or its agencies or its political subdivisions may require, but the remainder should be released.

Your fourth question asks:

"In connection with the above-mentioned licensing responsibility, Departmental records often contain information relating to third parties, such as children in child care facilities, as well as adoptive and foster homes. Our

> question in this regard is whether the statute requires the
> disclosure of the names of and/or information regarding
> third parties contained in records relating to an agency or
> organization with which the Department is dealing directly.
> Such information frequently involves a third party's right
> of privacy, such as medical reports, family background
> and other information about children in child care facilities.
> Much of this information, if released to the general public,
> could be very damaging to the child and/or parents. Much
> of this information was gathered with assurances that the
> information would be kept confidential. Some of this inform-
> ation was gathered by professional practitioners, including
> physicians, psychologists, etc. The records contain a wide
> assortment of private information that would be embarassing
> if not actually harmful to the persons involved. Such inform-
> ation would include the identity of teen-age girls who have had
> illegitimate children, descriptions of children with bizarre
> behavior patterns, marital problems of parents, etc. In the
> past, the Department has made every effort to maintain the
> confidentiality of such intimate information on families and
> children. It is my opinion that these records fall within the
> exceptions of Section 3 of the Act, especially exceptions
> No. 1 and No. 3. I am therefore requesting an opinion from
> you in accordance with Section 7 of the Act. "

House Bill 6 recognizes that there are several sources of confidentiality and that many records will be deemed confidential.

Among the many statutes establishing confidentiality of records, and just as examples, are the following: § 10 of Article 695j-1, the Medical Assistance Act of 1967; Article 1302-5.04 limiting the authority of the Attorney General to make public information derived from an examination of corporate books and records; Article 5547-12a making confidential the records of a mentally ill docket in the office of a county clerk; Article 5547-87 making confidential records of mental hospitals which directly or indirectly identify a patient; Article 5547-202, § 2.23 providing that, in information furnished to and by the State Department of Mental Health and Mental Retardation and others with reference to studies, etc., the identity of any person whose condition or treatment has been studied shall be kept confidential; Article 4445c making laboratory notifications to the Texas State Department of Health of venereal disease confidential; and others.

Among the information deemed confidential by law originating in judicial decisions are communications between an attorney and his client, now found as Article 38.10, Vernon's Texas Code of Criminal Procedure. The doctrine announced in Billings v. Atkinson, supra, would seem to establish the confidentiality  of certain types of information concerning a person's private affairs unless its revelation is warranted on some legitimate basis.  The broad language of the Supreme Court's opinion would seem to indicate that such matters as medical condition, family background, the parentage of illegitimate children, marital problems and other similar matters would be classified as confidential and as being protected by the right to privacy.

It is our opinion therefore, that while each case would have to be examined on its own merits, the types of material described by you in your question 4, for the most part, would be deemed confidential by judicial decision construing the common law, statutory law or constitutional law, and would not be subject to production under House Bill 6.

Your fifth question, dealing with adoptions under Article 46a, V. T. C. S. , asks whether the confidentiality required by § 10(b) of that Act applies only to placements made by the Department or whether it also extends to information contained in the licensing records of agencies licensed by the Department.

Section 10 of Article 46a, V. T. C. S. , makes certain records confidential. Subsection (b) to which you refer  in your question applies to files and records in adoption proceedings filed with the State Department of Public Welfare and does not necessarily refer to information contained in the licensing records of child-placing agencies licensed by the Department.

However, subsection (c) applies specifically to "files and records in adoption proceedings which are filed with and maintained by Child-Placing Agencies that are licensed by the State Department of Public Welfare. " It specifically prohibits the Department and the Agency from disclosing information contained  in such adoption files.  We therefore answer your question that the provisions of § 10 of Article 46a, V. T. C. S. , apply to information contained in the licensing records of child-placing agencies with reference to adoption, making such information confidential and subject to the inhibitions of § 3 of House Bill 6.

Section 11.17, Family Code, Title 2 (Acts 1973, 63rd Leg., Ch. 543, p. 1411) to become effective January 1, 1974, similarly provides in subsection (d) that records of adoptions, which the Department of Welfare is required to keep, are confidential and they, too, will be subject to the exception of § 3.

Your sixth and seventh questions may be answered together.

Your sixth question asks whether the Department is obligated, before or after release of requested records, to notify the persons or agencies involved that records have been requested which pertain to them. You further ask what interest, if any, such persons or agencies have in the subject of records maintained by the Department and the effect, if any, their interest would have on the actions of the Department in releasing such information.

Your seventh question asks:

"Section 10 of the Act provides a penalty for distributing information 'deemed confidential'. Section 10 does not indicate by whom information is deemed confidential. Who makes the determination of confidentiality under Section 10?"

Section 10 reads as follows:

"(a) Information deemed confidential under the terms of this Act shall not be distributed.

"(b) Any person who violates Section 10(a) of this Act shall be deemed guilty of a misdemeanor and upon conviction shall be punished . . . ."

Information which is or is not confidential is nowhere defined in the Act. Section 3(a)(1) excepts from the disclosure provisions of the Act "information deemed confidential by law, either Constitutional, statutory, or by judicial decision."

You ask who makes the determination of confidentiality which must be made under § 3. The initial decision as to whether requested information is confidential and thus excepted from disclosure must be made by the

governmental body which is requested to disclose it.   If there has been no "previous determination" that the requested information falls within one of the exceptions, and if the governmental body determines that information is excepted from disclosure the governmental body may,  no less than ten days after receiving the request,  itself request a decision from the Attorney General to determine whether or not the information is confidential.   Section 7(a).   If there is no such prior determination and no decision of the Attorney General is requested,  the information shall be presumed to be public information.

Thus,  in the second instance,  the Attorney General shall determine whether or not information is confidential.

Finally,  the courts may be called upon to determine whether or not information is confidential either in hearing an application for writ of mandamus under §8 of the Act,  in a criminal action under § 10,  or in civil proceedings brought either to enjoin disclosure of information or to recover damages for its disclosure.

Nowhere in this procedure is there any requirement that an individual or agency be notified of a request for records which pertain to them.   The Act affords protection against the wrongful disclosure of confidential information through the sanctions of § 10 or by civil actions for damages.   If information clearly is public and subject to disclosure,  the agencies should make it available.   Where there has been no prior determination,  and the agency is in doubt,  the question should be referred to the Attorney General under § 7(b).   That section,  in calling for a decision by the Attorney General, requires it to be rendered "consistent with standards of due process."   It will be for this office to determine what notice,  if any,  is required in each case presented to it.

In a subsequent letter you have asked us specific questions about a particular request for information concerning nursing homes.   Those specific questions would be better answered in a decision under § 7(b) described above. However,  the broader question of whether you may release only the available raw data or whether you are under an obligation to make extensive computations and to assemble from various places the missing data necessary to comply with the request for   information,  may appropriately be answered here.

The definitions of public records and public information to which we alluded earlier in this opinion, lead us to conclude that the Act refers to information already in the possession of the governmental body. Section 3(d) states:

> "It is not intended that the custodian of public records may be called upon to perform general research within the reference and research archives and holdings of state libraries."

On the other hand, it is certainly the public policy announced by the Act to make information available and in our opinion the governmental bodies must exercise a certain amount of good faith in assisting persons entitled to information to receive it.

### SUMMARY

House Bill 6 of the 63rd Legislature is designed to afford full and complete information concerning the affairs of government and the official acts of public officials and employees. At the same time, it recognizes the right of citizens to privacy in their affairs.

Each governmental body is charged with cooperating to the extent possible in seeing that these purposes of the Act are fulfilled and, to that end, every effort within reason should be made to make disclosable records available. However, reports, audits, evaluations, and investigations become public information, subject to disclosure, only upon their completion.

The governing body is required to decide whether the information requested is excepted from public disclosure by the Act. If it concludes that it is excepted, the Attorney General, and finally, the courts must pass upon the question. At no point is the agency _required_ to give notice to the subject of any record or public information.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

p. 419

APPROVED:


LARRY F. YORK, First Assistant


DAVID M. KENDALL, Chairman
Opinion Committee